UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN PALERMO AND JULIE PALERMO,<br>　　Plaintiffs<br><br>v.<br><br>TOWN OF NORTH READING,<br>a body politic,<br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-11782 RWZ |

## AMENDED COMPLAINT

### I. Parties

1.　　Plaintiff John Palermo is an individual residing at 8 Hillside Road, Boxford, Massachusetts.

2.　　Plaintiff Julie Palermo is an individual residing at 8 Hillside Road, Boxford, Massachusetts

3.　　The Defendant, Town of North Reading, is a body politic with a usual place of business at 235 North Street, North Reading, Massachusetts.

### II. Facts

4.　　On June 30, 1987, Plaintiffs John Palermo and Julie Palermo (collectively "Palermos") acquired the premises known as Lots 70, 71, and 86 First Street, North Reading, Massachusetts, as further described in a deed rendered with the Middlesex South District Registry of Deeds in Book 18278, Page 170 (Premises). The Premises abut a private way in North Reading known as First Street.

5.　　On or about August 11, 1997, the Palermos made application to the North Reading Board of Health seeking a disposal work permit for a septic system to

be built on the Premises. A copy of correspondence dated August 28, 1997 from Martin Fair, the Health Agent of the Defendant, is attached to Plaintiffs' complaint as Exhibit 1.

6.      Said permit was sought in connection with a building permit application by the Palermos for the Premises, also filed in August of 1997.

7.      On August 28, 1997, The Palermos obtained approval for a percolation test for the Premises which appraisal was required for the septic permit and ultimately the building permit sought by the Plaintiffs.

8.      Plaintiffs' building permit was denied by the North Reading Building Inspector until such time that First Street was completely constructed.

9.       Immediately thereafter, litigation was commenced by an abutter to Palermos' property, William Flynn, seeking to enjoin the Palermos and others from using an "old gravel way" crossing his property, located outside the limits of First Street, which way had been used by the Palermos and others to access their property. Flynn also brought an action against the Town of North Reading and its Building Inspector alleging that the Town had breached its duty relative to First Street and the old gravel way.  Said lawsuit effectively prevented the Plaintiffs from proceeding with the plans to develop the premises until said suit was resolved.

10.      From 1997 to date, the Defendant has allowed other property owners to develop similar properties to the Premises, yet the Defendant that time had denied the Palermos the right to develop their property.

11.      In the summer of 2003, the Palermos were contacted by an appraiser, William LaChance (LaChance) on behalf of the Defendant indicating that the Town was planning to take Palermos' land by eminent domain.

12.     In response to the same, the Palermos caused correspondence to be sent to such appraiser, confirming that the premises were in fact a buildable lot. A copy of such correspondence is attached to Plaintiffs' original complaint as Exhibit 2.

13.     In 2004, the Palermos again petitioned the Defendant, through its Community Planning Commission (CPC), to build out First Street as an unaccepted street. A copy of such application is attached to Plaintiffs' original complaint as Exhibit 3.

14.     The Defendant, though its Town Planner, Robert Rodgers, (Rodgers) informed Plaintiffs' counsel that the CPC, the Town's Planning Board, was not willing to allow the Plaintiffs to build out First Street according to the rules and regulations for the development of unaccepted streets then in force, and that a complete subdivision plan submission would now be necessary.

15.     Such direction by Rodgers was absolutely contrary to the treatment given to other property owners in North Reading.

16.     On March 24, 2005, despite the existence of the aforesaid Flynn lawsuit, the Town took Plaintiffs' property by eminent domain. A copy of a notice evidencing such taking is attached to Plaintiffs' original complaint as Exhibit 4.

17.     The *pro tanto* award given to the Palermos was $15,250.00.

18.     On February 5 -8, 2008, A jury trial was held in the Middlesex (MA) Superior Court to try the issue of the eminent domain taking, which claim was set forth in Count I in Plaintiffs' originally field complaint.

19.     In connection with said trial, the Defendant, in its pretrial memorandum filed with the Superior Court, asserted that:

> "Mr. LaChance [its appraiser] is expected to testify as the fair market value of the property at the time of taking. . .
>
> **Additionally, Mr. LaChance is expected to testify that the subject is an unbuildable lot.** Moreover, Mr. LaChance is expected to testify that even if the plaintiffs can substantiate their claim that the lot is buildable there are significant regulatory and physical hurdles that must be overcome in order to obtain a building permit **such that the lot is essentially unbuildable.** (emphasis supplied)"

20. At said trial, LaChance testified *inter alia* that:

- He was the appraiser hired by the Defendant in connection with the taking of Plaintiffs' land, and that he always considered the lot in question buildable;

- He considered that market value of the lot to be $280,000, assuming a passable road existed for access to the premises;

- Although he didn't have any calculations available to him when he appraised the lot in 2003, he at the time of trial in 2008 thought that the road costs were $140, 000; and

- As set forth in his appraisal submitted at trail as an exhibit, he concluded the value of the lot in question therefore to be $140,000.

21. At the conclusion of trial, the jury awarded damages to the Palermos (pursuant to Count I only of the original complaint) in the amount of $184, 000 plus interest and costs.

22. The actions of the Defendant, through its obstruction of Palermos' attempts to get the lot permitted, and its rejection of its own appraisers valuation of the premises when awarding the *pro tanto* to the Plaintiffs, was done in bad faith.

23. The *pro tanto* amount awarded to the Plaintiffs did not represent the fair market value of the property before the taking.

24. As a result, the Palermos have been damaged.

## Count I

**(Regulatory Taking)**
**(U.S. Const., 5th Amend)**
**(Mass. Const., Art. X and XII)**

25. The Plaintiffs restate and re-allege each other allegation of the Complaint as if set forth at length herein.

26. As set forth above, the actions, decisions, and policies of the Defendant had previously deprived the Plaintiffs of all economically beneficial use of the Premises.

27. The said actions, decisions, and policies of the Defendant do not have a substantial relationship to public health, safety or welfare.

28. Palermo's' proposed development of the Premise would not have created a nuisance or violation of state property laws.

A. Enter Judgment declaring that the Defendant have effected an unconstitutional taking of the Plaintiffs' Premises:

B. Award the Plaintiffs damages in an amount to be determined at trial;

C. Award the Plaintiffs interest, costs, and attorneys' fees; and

D. Grant the Plaintiffs such other and further relief as is just and appropriate.

## COUNT II

**(Damages- Bad Faith )**
**(Massachusetts Civil Rights Act M.G.L. ch. 12 §11I**
**(Federal Civil Rights Act 42 USC 1983 )**

29. The Plaintiff restates and re-alleges each other allegation of this Complaint as if set forth at length herein.

30. The actions of the Defendant in rejecting the Palermos' plans were made in bad faith.

31. The actions of the Defendant knowing that all or substantially all other similarly situated properties previously considered by the CPC had been approved, was an act of bad faith.

32. The actions of the Defendant and CPC and its agents maliciously and intentionally deprived Plaintiffs of the protections afforded by Massachusetts and Federal law and deprived them of their civil rights.

33. The actions of Defendant's agents were not done within the scope of their official authority as Members of the Board.

34. The actions of the Defendant, in awarding a *pro tanto* to the Plaintiffs that clearly ignored the appraisal conducted by its own appraiser, and by clearly misreporting the appraiser's expected testimony to the court in its pretrial memorandum in the Superior Court, were malicious acts of bad faith that required the Plaintiffs to institute an action pursuant to state law to challenge the *pro tanto* award.

35. Such state court challenge resulted in significant legal fees, expert witness fees, lost wages for time spent in court and in preparation for court, and financing fees incurred on the delay of receiving a just payment for the property taken by the Defendant.

WHEREFORE, the Plaintiffs pray that this Court:

A. Enter Judgment in favor of the Plaintiffs;

B.        Award the Plaintiffs damages against the Defendant in an amount to be determined at trial;

C.        Award the Plaintiffs interest, costs and attorneys' fees; and

D.        Grant the Plaintiffs such other and further relief as is just and appropriate, including punitive damages.

### Jury Demand

The Plaintiffs demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

**JOHN PALERMO AND JULIE PALERMO,**
Plaintiffs,
By their attorney,

/s/
Mark J. Favaloro, BBO# 160330
FAVALORO & ASSOCIATES
348 Park Street, Suite 202
North Reading MA 01864
(978) 664-1000

Dated: March 21, 2008